1

2

3

4

5        UNITED STATES DISTRICT COURT

6        EASTERN DISTRICT OF WASHINGTON

7  MICHAEL JOSEPH CALLISON,            No. 1:15-CV-3097-MKD

8              Plaintiff,              ORDER GRANTING PLAINTIFF'S
                                       MOTION FOR SUMMARY
9        vs.                          JUDGMENT AND DENYING
                                       DEFENDANT'S MOTION FOR
10  CAROLYN W. COLVIN,                 SUMMARY JUDGMENT

11  Acting Commissioner of Social Security,   ECF Nos. 19, 21

12             Defendant.

13        BEFORE THE COURT are the parties' cross-motions for summary

14  judgment.  ECF Nos. 19, 21.  The parties consented to proceed before a magistrate

15  judge.  ECF No. 6.  The Court, having reviewed the administrative record and the

16  parties' briefing, is fully informed.  For the reasons discussed below, the Court

17  grants Plaintiff's motion (ECF No. 19) and denies Defendant's motion (ECF No.

18  21).

19

20

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."

*Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in

1   "substantial gainful activity," the Commissioner must find that the claimant is not

2   disabled.  20 C.F.R. § 404.1520(b).

3        If the claimant is not engaged in substantial gainful activity, the analysis

4   proceeds to step two.  At this step, the Commissioner considers the severity of the

5   claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

6   from "any impairment or combination of impairments which significantly limits

7   [his or her] physical or mental ability to do basic work activities," the analysis

8   proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment

9   does not satisfy this severity threshold, however, the Commissioner must find that

10  the claimant is not disabled.  20 C.F.R. § 404.1520(c).

11       At step three, the Commissioner compares the claimant's impairment to

12  severe impairments recognized by the Commissioner to be so severe as to preclude

13  a person from engaging in substantial gainful activity.  20 C.F.R. §

14  404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

15  enumerated impairments, the Commissioner must find the claimant disabled and

16  award benefits.  20 C.F.R. § 404.1520(d).

17       If the severity of the claimant's impairment does not meet or exceed the

18  severity of the enumerated impairments, the Commissioner must pause to assess

19  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

20  defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

1  capable of performing other work; and (2) such work "exists in significant

2  numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*,

3  700 F.3d 386, 389 (9th Cir. 2012).

4  ## ALJ'S FINDINGS

5  Plaintiff applied for Title II disability insurance benefits on December 2,

6  2011, alleging onset beginning April 24, 2010.  Tr. 12, 33.  The application was

7  denied initially, Tr. 82-95, and upon reconsideration, Tr. 96-109.  Plaintiff

8  appeared for a hearing before an administrative law judge (ALJ) on May 16, 2013.

9  Tr. 33-81.  On August 22, 2013, the ALJ denied Plaintiff's claim.  Tr. 16-32.

10  At step one, the ALJ found that Plaintiff has not engaged in substantial

11  gainful activity since April 24, 2010.  Tr. 21.  At step two, the ALJ found Plaintiff

12  suffers from the following severe impairments: right shoulder tear and bursitis;

13  obesity.  Tr. 21.  At step three, the ALJ found that Plaintiff does not have an

14  impairment or combination of impairments that meets or medically equals a listed

15  impairment.  Tr. 23.  The ALJ then concluded that the Plaintiff has the RFC to

16  perform light work, with additional limitations.  Tr. 23.  At step four, the ALJ

17  found Plaintiff cannot perform any past relevant work.  Tr. 28.  At step-five, the

18  ALJ found that, considering Plaintiff's age, education, work experience, and RFC,

19  there are jobs in significant numbers in the national economy that Plaintiff could

20  perform, such as telemarketer and semi-conductor bonder.  Tr. 27.  On that basis,

1    the ALJ concluded that Plaintiff is not disabled as defined in the Social Security

2    Act.  Tr. 27.

3          On April 13, 2015, the Appeals Council denied review, Tr. 1-7, making the

4    ALJ's decision the Commissioner's final decision for purposes of judicial review.

5    *See* 42 U.S.C. § 405(g); 20 C.F.R.§ 422.210.

6    **ISSUES**

7          Plaintiff seeks judicial review of the Commissioner's final decision denying

8    him disability insurance benefits under Title II of the Social Security Act.  ECF

9    No. 19.  Plaintiff raises the following issues for this Court's review:

10       1.  Whether the ALJ properly found Plaintiff's anxiety and headaches were

11   not severe;

12       2.  Whether the ALJ properly weighed the medical opinion evidence; and

13       3.  Whether the ALJ properly weighed Plaintiff's symptom claims.

14   **DISCUSSION**

15   **A. Step-Two Analysis**

16         Plaintiff first faults the ALJ for, in the step-two analysis, failing to find

17   Plaintiff's anxiety/panic attacks and headaches to be severe.  Plaintiff contends that

18   the failure to classify the limitations as severe resulted in an inaccurate RFC.  ECF

19   No. 19 at 12, 22-23.

20

The step-two inquiry is merely a *de minimis* screening device intended to dispose of groundless claims. *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001). It does not result in a finding of disability if a particular impairment is found to be "severe" within the meaning of the Commissioner's regulations. *See Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007).

An impairment, to be considered severe, must significantly limit an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii); *see Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Basic work activities include "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 416.1521(b). An impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and "under no circumstances may the existence of an impairment be established on the basis of symptoms alone." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (citing SSR 96–4p, 1996 WL 374187 (July 2, 1996)) (defining "symptoms" as an "individual's own perception or description of the impact of" the impairment). Plaintiff bears the burden of proving that his medically determinable impairment or its symptoms affect his ability to perform basic work activities. *Edlund*, 253 F.3d at 1159-60.

1    This Court finds that the ALJ did not err in the step-two analysis.  At step

2    two, the ALJ found Plaintiff suffered from the following severe impairments: right

3    shoulder tear and bursitis; obesity.  Tr. 21.  Thus, Plaintiff's claim proceeded past

4    the initial *de minimis* screening at step two.  Even if the ALJ had found Plaintiff's

5    anxiety and headaches to also be severe impairments, such a conclusion would not

6    have resulted in a finding of disability at step two.

7        Moreover, the record does not establish Plaintiff's alleged anxiety

8    significantly limits his ability to do basic work activities.  Roland Dougherty,

9    Ph.D., diagnosed Plaintiff with generalized anxiety disorder with panic attacks,

10   adjustment disorder with depression and assessed Plaintiff with a GAF score of 55.

11   Tr. 22 (citing Tr. 395-96).  The ALJ acknowledged Dr. Dougherty's diagnosis but

12   accorded the doctor's medical source statement greater weight.  Tr. 22.  In his

13   statement, Dr. Dougherty opined that Plaintiff should be able to understand,

14   remember, and follow at least simple directions and probably complex directions.

15   Tr. 396.  The contemporaneous mental status exam (MSE) supported Dr.

16   Dougherty's opinion.  Tr. 394.  Dr. Dougherty observed Plaintiff was well-

17   oriented, his memory was "okay," he knew the name of the president and the

18   governor, the states that border Washington, and was able to complete a serial

19   sevens test "easily and accurately."  Tr. 394.  In addition he was able to spell

20   "world" correctly both forward and backward and carry out a 3-step command

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

"with ease." Tr. 394. Dr. Dougherty's MSE did not appear to reveal any serious cognitive deficits. Tr. 394. The ALJ found this assessment consistent with the opinion of reviewing medical consultants, Leslie Postovoit, Ph.D., and Diane Fligstein, Ph.D. Tr. 87, 102. The ALJ properly concluded that Plaintiff did not meet his burden to show a severe impairment. Tr. 22.

Plaintiff contests this finding, contending his symptoms and Dr. Dougherty's diagnosis establish his anxiety severely impaired his ability to work. As evidence of the severity of his impairments, Plaintiff directs the Court's attention to his GAF score of 55. A GAF score between 51 and 60 indicates moderate difficulty in social and occupational functioning. *Diagnostic and Statistical Manual of Mental Disorders* 32-33 (4th ed., 1994). A moderate impairment is not a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii); *see Smolen*, 80 F.3d at 1290 (an impairment, to be considered severe, must significantly limit an individual's ability to perform basic work activities.). More importantly, as explained above, Dr. Dougherty's MSE does not indicate a severe impairment in Plaintiff's cognitive functioning. Plaintiff's symptom claims to the contrary are insufficient to establish a severe impairment. *Ukolov*, 420 F.3d at 1005 ("under no circumstances may the existence of an impairment be established on the basis of symptoms alone."). Accordingly, the ALJ properly declined to find Plaintiff's anxiety "severe."

Regarding Plaintiff's alleged chronic headaches, the ALJ found they were not severe because Plaintiff testified that he does not take any medication for them. Tr. 22. Plaintiff contests this finding too, alleging he takes medication for his headaches, citing evidence of his prescriptions for pain medication. ECF No. 19 at 22 (citing Tr. 51, 219, 227). The records Plaintiff cites suggest he takes pain medication, but in his testimony he admitted "[n]ot specifically for the headaches." Tr. 51. As he testified, the pain medication was for his arm injury. Tr. 51. The only evidence Plaintiff identifies to establish his headaches as severe is his own symptom claims. ECF No. 19 at 22-23. A claimant's symptom claims alone are insufficient to establish a severe impairment. *Ukolov*, 420 F.3d at 1005. The ALJ properly declined to find Plaintiff's headaches severe.

**B. Medical Opinion Evidence**

Plaintiff next faults the ALJ for discounting the opinions of treating physicians Dr. Roesler and Dr. Mullin, examining physician Dr. Pellicer, and reviewing physician Dr. Hale.[1] ECF No. 19 at 13-22.

───────────────────

[1] Plaintiff also alleges the ALJ erred in rejecting the opinions of Dr. McLaughlin, Dr. Seltzer, Dr. Hander, Dr. Henderson, and Dr. Rosa, but he failed to present any argument regarding their medical opinions. The Court reviews "only issues which are argued specifically and distinctly in a party's opening brief." *Greenwood v.*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a

_____

*Fed. Aviation Admin*., 28 F.3d 971, 977 (9th Cir. 1994). The Court will not address a finding Plaintiff contests but fails to argue with any specificity in his briefing. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (citation omitted).

treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

*1.    Stephen Roesler, M.D.*

In November 2011, Dr. Roesler opined that an exploration of Plaintiff's axillary nerve and arthroscopy of the shoulder might be helpful.  Tr. 404.  In February 2012, Sean Mullin, D.O., performed an electromyogram (EMG) study of Plaintiff's axillary nerve.  Tr. 375-376.  While finding no evidence of axillary, suprascapular neuropathy, Dr. Mullin determined that an EMG of axillary nerves was too inconsistent to be of any diagnostic help.  Tr. 376.  A month later, in March 2012, Dr. Roesler reviewed Dr. Mullin's notes on the EMG.  Tr. 428.  Dr. Roesler found Dr. Mullin's comment ambiguous and noted that Dr. Mullin performed an EMG of the involved muscles, not a nerve conduction study.  Tr. 428.  Dr. Roesler opined that a nerve conduction study would provide additional diagnostic information.  Tr. 428.  In June 2012, Dr. Sloop performed a motor nerve study and EMG.  Tr. 431.  Dr. Sloop found "no evidence of right axillary

1    neuropathy . . . not any significant asymmetry of motor amplitude or latency of

2    axillary nerve conduction values . . . and no denervation or neurogenic motor unit

3    potentials." Tr. 431.  He concluded the study was "normal."  Tr. 431.  Based on

4    both Dr. Mullin's and Dr. Sloop's studies, Dr. Roesler revised his opinion in July

5    2012.  Tr. 425.  The "previous restriction [to 10 pounds] was based on the thought

6    that we had not completely defined whether or not his axillary nerve was

7    functioning appropriately."  Tr. 425.  But, because the studies showed "normal

8    values," and that his rotator cuff healed, Dr. Roesler revised his assessment and

9    limited Plaintiff to lifting, pushing, and pulling no more than 25 pounds.  Tr. 425.

10   Provided work was limited to the 25-pound threshold, Dr. Roesler opined that

11   Plaintiff could work.  Tr. 425.  The ALJ credited the amended opinion and

12   accordingly limited Plaintiff.  Tr. 23, 25.

13        Plaintiff faults the ALJ for crediting Dr. Roesler's revised opinion.  Plaintiff

14   contends Dr. Roesler wrongly relied on Dr. Sloop's opinion over the opinions of

15   examining physicians Steven Rosa, M.D.; Marjorie Henderson, M.D.; and Sean

16   Mullin, D.O.  ECF No. 19 at 19.  In essence, Plaintiff asks the Court to substitute

17   its assessment of their opinions for Dr. Roesler's.  But it is improper for an ALJ or

18   court to substitute its medical opinion for a medical professional's.  *Miller v.

19   Astrue*, 695 F. Supp. 2d 1042 (C.D. Cal. 2010); *see also Nguyen v. Chater*, 172

20   F.3d 31, 35 (1st Cir. 1999) (As a lay person, an ALJ is "simply not qualified to

1  interpret raw medical data in functional terms.").  Dr. Roesler, as a treating

2  physician, is equipped to assess whether a neurological conductive study is a useful

3  diagnostic tool and, if so, whether the raw data adequately assuaged his concerns

4  that Plaintiff may suffer an axillary nerve injury.  Moreover, as a treating

5  physician, Dr. Roesler is entitled to greater weight than the examining physicians.

6  *Holohan*, 246 F.3d at 1202.

7         Dr. Roesler, as a treating physician in the instant matter, had access to

8  additional information that certain examining physicians did not.  Dr. Roesler

9  reviewed the opinions of examining physicians and revised his opinion.  Dr. Rosa

10  diagnosed a probable axillary nerve injury in March 2011.  Around the same time,

11  Dr. Henderson believed such an injury was likely.  Tr. 411.  But, in February 2012,

12  when Dr. Mullin performed an EMG, he found "[n]o evidence of Axillary,

13  Suprascapular neuropathy or C5 radiculopathy via EMG."  Tr. 376.  Plaintiff relies

14  on Dr. Mullin's statement that axillary nerve conduction tests are too inconsistent

15  to be of any diagnostic help, in order to challenge Dr. Roesler's opinion.  Tr. 376.

16  But a later more complete evaluation by Dr. Sloop found "no evidence of right

17  axillary neuropathy . . . not any significant asymmetry of motor amplitude or

18  latency of axillary nerve conduction values . . . and no denervation or neurogenic

19  motor unit potentials."  Tr. 431.  This more recent assessment is entitled to greater

20  weight.  *Orn v. Astrue*, 495 F.3d 625, 633-634 (9th Cir. 2007); *see also*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

*Khoenesavatdy v. Astrue*, 549 F. Supp. 2d 1218, 1230 (E.D. Cal. 2008). Relying on this more recent opinion, Dr. Roesler revised his assessment of Plaintiff's limitations. The ALJ properly credited Dr. Roesler's more recent opinion over the examining physicians' opinions because, unlike the examining physicians, Dr. Roesler had the benefit of reviewing Dr. Sloop's more complete examination.

  *2. Mary Pellicer, M.D.*

   Dr. Pellicer opined that Plaintiff could walk for four to six hours and sit for six hours in an eight-hour workday, provided Plaintiff was afforded more frequent breaks because of his chronic right shoulder, low back, and left-knee pain. Tr. 387. In addition, Dr. Pellicer opined that Plaintiff was unable to lift or carry and could not bend, squat, crawl, kneel or climb. Tr. 387. Plaintiff's chronic right-shoulder pain, Dr. Pellicer opined, also prevented him from manipulating his right hand. Tr. 387. With the exception of the limitation on sitting, the ALJ accorded Dr. Pellicer's opinion little weight. Tr. 26. The ALJ discounted Dr. Pellicer's opinion because subsequent medical opinions – including treating physician, Dr. Roesler's – revealed Plaintiff possessed a greater, physical functional capacity. Tr. 26.

   Plaintiff challenges the ALJ's finding, contending she should have accepted Dr. Pellicer's limitations on lifting and standing over Dr. Roesler's. Plaintiff reiterates that Dr. Roesler's opinion was based on the flawed assumption that a nerve conductive study is a useful diagnostic tool. Plaintiff's contention invites the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

Court to reweigh the evidence, which this Court cannot do. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001). As explained above, the ALJ appropriately credited Dr. Roesler's opinion.

In addition, Plaintiff contends the ALJ accepted Dr. Pellicer's opinion that Plaintiff required more frequent breaks from sitting, but failed to accommodate those breaks in the RFC. ECF No. 19 at 17. Plaintiff misreads the ALJ's decision. "Apart from sitting," the ALJ accorded Dr. Pellicer's opinion minimal weight. Tr. 26. The ALJ accepted Dr. Pellicer's opinion that Plaintiff could sit for six out of eight hours in a workday, not that Plaintiff needed more frequent breaks. Tr. 26. The ALJ accounted for Dr. Pellicer's sitting limitation in the RFC by limiting Plaintiff to sitting for 6 out of 8 hours in a workday. Tr. 23. The ALJ properly rejected the more frequent breaks Dr. Pellicer assessed for the same reasons as described above, because subsequent medical opinions revealed Plaintiff was capable of greater physical functioning. *Khoenesavatdy*, 549 F. Supp. 2d at 1230 ("It is established that a more recent opinion may be entitled to greater deference than an older opinion . . . .") (citing *Orn*, 495 F.3d at 633-34).

### 3. *Gordon Hale, M.D.*

Reviewing physician Gordon Hale, M.D., limited Plaintiff to lifting and carrying 10 pounds occasionally provided he do no pushing or pulling with his

right arm.  Tr. 90-91.  The ALJ did not address Dr. Hale's opinion.  Plaintiff

contends, and the Commissioner does not contest, the ALJ erred.

The Commissioner contends the ALJ's error was harmless.  "An error is

harmless only if it is inconsequential to the ultimate nondisability determination, or

if despite the legal error, the agency's path may reasonably be discerned."  *Brown-*

*Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  The Commissioner contends

Plaintiff failed to show the harmfulness of the error.  ECF No. 21 at 7.  But the

vocational expert, as Plaintiff notes, testified that the Plaintiff would be unable to

sustain competitive employment if limited as Dr. Hale opined.  Tr. 73-76, 90-91.

Thus, if Dr. Hale's opinion were credited, his opinion would be of significant

consequence, requiring the ALJ to find Plaintiff disabled.

Next, the Commissioner contends the ALJ's "path may reasonably be

discerned" by looking to the ALJ's assessment of Dr. Hander's opinion.  *Brown-*

*Hunter*, 806 F.3d at 492.  Although the Ninth Circuit permits courts to affirm an

ALJ when she explains her decision with "less than ideal clarity," *Treichler v.*

*Comm'r of Soc. Sec. Admin*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citation and

internal quotation marks omitted), the Ninth Circuit "still demands that the agency

set forth the reasoning behind its decisions in a way that allows for meaningful

review."  *Brown-Hunter*, 806 F.3d at 492.  A clear statement of the agency's

reasoning is necessary because this Court can affirm the agency's decision to deny

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

benefits only on the grounds invoked by the agency.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

This Court is "constrained to review the reasons the ALJ asserts."  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).  If the ALJ fails to specify her reasons for discrediting a medical opinion, "a reviewing court will be unable to review those reasons meaningfully without improperly substituting [its] conclusions for the ALJ's, or speculating as to the grounds for the ALJ's conclusions."  *Brown-Hunter*, 806 F.3d at 492 (quotations and brackets omitted).  Here, the ALJ failed to address Dr. Hale's opinion entirely.

Plaintiff asks the Court to credit the opinion of Dr. Hale as a matter of law and remand this case for an award of benefits.  ECF No. 19 at 20.  To do so, the Court must find that the record has been fully developed and further administrative proceedings would not be useful.  *Garrison v. Colvin*, 759 F.3d 995, 1019-20 (9th Cir. 2014); *Varney v. Sec. of Health and Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988).  Otherwise, the appropriate remedy is "remand to the agency for additional investigation or explanation."  *Treichler*, 775 F.3d at 1099.

Administrative proceedings are useful where there is a need to resolve conflicts and ambiguities in the evidence.  *Id.* at 1101 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  Here, there are conflicts to resolve.  For example, the ALJ rejected similar limitations from Dr. Hander, who reviewed

Plaintiff's medical record three months after Dr. Hale.  Tr. 26, 90-91, 105-106.

"Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id*. Instead, this Court remands this case for an evaluation of Dr. Hale's opinion.

## C. Adverse Credibility Finding

Plaintiff contends the ALJ failed to provide specific findings with clear and convincing reasons for discrediting his symptom claims.  ECF No. 19 at 23-30.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).  "General

findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ discounted Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms because (1) the medical record does not support the severity of Plaintiff's alleged limitations; and (2) Plaintiff's daily activities do not reflect the severity of limitations he alleges.

1    *1. Lack of Objective Medical Evidence*

2    The ALJ found the objective medical evidence did not support the degree of

3    limitations alleged by Plaintiff.  Tr. 24.

4    An ALJ may not discredit a claimant's pain testimony and deny benefits

5    solely because the degree of pain alleged is not supported by objective medical

6    evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v.*

7    *Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601

8    (9th Cir. 1989).  However, the medical evidence is a relevant factor in determining

9    the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857;

10    20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *see also* S.S.R. 96-7p.[2]  Minimal

11    objective evidence is a factor which may be relied upon in discrediting a claimant's

12    testimony, although it may not be the only factor.  *See Burch v. Barnhart*, 400 F.3d

13    676, 680 (9th Cir. 2005).  While subjective pain testimony may not be rejected

14    solely because it is not corroborated by objective medical findings, the medical

15    _____

16    [2] S.S.R. 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016.  The new

17    ruling also provides that the consistency of a claimant's statements with objective

18    medical evidence and other evidence is a factor in evaluating a claimant's

19    symptoms. S.S.R. 16-3p at *6.  Nonetheless, S.S.R. 16-3p was not effective at the

20    time of the ALJ's decision and therefore does not apply in this case.

evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Plaintiff complained of constant pain in his shoulder, pain he alleged prevented him from sleeping through the night, from lifting his arm above his shoulder, and from carrying more than 10 pounds. Tr. 24. The ALJ found that clinical evidence showed some degree of functional limitations, but not to the degree alleged. The evidence showed that Plaintiff suffered a tear of his subscapularis tendon while working. Tr. 242. He underwent surgery to repair the tear and progressed slowly thereafter. Tr. 242-244, 270-279. Post-operative imaging showed no sign of repair failure. Tr. 291. By May 2011, Plaintiff had no motor or sensory loss to the muscles innervated below the right elbow. Tr. 294. His shoulder girdle muscles were intact and he was able to externally and internally rotate his shoulder 90 degrees, with 170 degrees of forward flexion and 30 degrees of extension. Tr. 294. By February 2012, Plaintiff had normal range of motion and sensation in his shoulders, elbows, wrists, and fingers. Tr. 375. He also had 5/5 strength bilaterally except for give-way weakness in his right deltoid and bicep. Tr. 375. A couple weeks later, Plaintiff showed some reduced range of motion and strength in his right arm. Tr. 385-386. Lynn Briggs, PA-C, similarly observed a reduced range of motion in Plaintiff's right shoulder. Tr. 421. But, as

1   she opined, this was "likely due to decreased activity and pain avoidance," Tr. 422,

2   a sentiment shared by Dr. Seltzer, Tr. 440 (noting Plaintiff's deconditioning).

3        Plaintiff also complained that his back pain forced him to lie down two to

4   three times a day for relief.  Tr. 24.  While Plaintiff's reduced range of back motion

5   was noted, an electrodiagnostic report in February 2012 showed no evidence of

6   axillary subscapulary neuropathy or C5 radiculopathy.  Tr. 376, 384.

7        Plaintiff contends the evidence described above is not clear and convincing

8   because Dr. Mullins believed axillary nerve conduction studies were too

9   inconsistent to be of any diagnostic help and could not rule out a past injury.  ECF

10  No. 19 at 26-27 (citing Tr. 376).  But Plaintiff's alternative interpretation of the

11  evidence is insufficient to invalidate the ALJ's credibility finding.  *Rollins*, 261

12  F.3d at 857.  Where the ALJ's finding is supported by substantial evidence, the

13  Court cannot second-guess the ALJ.  *Thomas*, 278 F.3d at 959.  Here, substantial

14  evidence supports the ALJ's finding.  In particular, the study Dr. Sloops performed

15  after Dr. Mullins and which Dr. Roesler relied upon, support the ALJ's finding that

16  Plaintiff is not as limited as he alleges.

17       Next, Plaintiff contends his strength and range-of-motion were worse than

18  the ALJ described.  As evidence, Plaintiff directs the Court's attention to a physical

19  exam Dr. Seltzer performed in 2013.  ECF No. 19 at 28.  Plaintiff exhibited a

20  decreased range of motion in his right shoulder compared to his left at that

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 24

examination.  Tr. 440.  And, because there was give-way weakness, Dr. Seltzer

was not able to measure Plaintiff's right-arm strength.  Tr. 440.  The ALJ

considered Dr. Seltzer's exam.  Tr. 25.  But because Dr. Seltzer observed "obvious

deconditioning," the ALJ concluded Plaintiff's limitations stemmed from a lack of

activity, not his physical limitations.  Tr. 25 (citing Tr. 440, 422).  The record

supports the ALJ's finding that the medical evidence does not support the degree

of limitations alleged by Plaintiff.

### 2.  *Daily Activities*

The ALJ also found Plaintiff's reported activities demonstrated that he was

capable of performing a full array of activities.  Tr. 25.  While a claimant need not

vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a

claimant's testimony when the claimant reports participation in everyday activities

indicating capacities that are transferable to a work setting" or when activities

"contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-

13 (internal quotation marks and citations omitted).  For instance, the ALJ noted

Plaintiff performed household chores, including laundry and dishes, as well as

preparing simple meals.  Tr. 25 (citing 213-216, 383); *see also* Tr. 52, 54.  In

addition, Plaintiff reported performing all self-care activities.  *Id.*

Plaintiff contends the ALJ's reasoning is insufficient.  While he can perform

some chores and self-care activities, Plaintiff notes that he experiences difficulty

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 25

changing position in bed, dressing, putting on socks and shoes, and combing his hair.  ECF No. 19 at 30 (citing Tr. 248, 395).  His shoulder pain prevents him from sleeping more than three hours every night.  *Id.* (citing Tr. 381).  His insomnia leaves him so tired he is relegated to watching television and napping most days.  *Id.* (citing Tr. 383).  The daily activities he can perform, Plaintiff contends, are consistent with the limitations he alleges.

The daily activities the ALJ cited do not contradict Plaintiff's alleged symptoms.  *Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.").  Plaintiff's ability to do laundry and prepare simple meals is not particularly probative of his ability to satisfy the stress demands of competitive work on a consistent basis.  *Fair,* 885 F.2d at 603 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").  To the extent the ALJ relied on Plaintiff's daily activities to discredit Plaintiff, the ALJ erred.

The ALJ's error requires remand.  The only remaining reason the ALJ offered for discrediting Plaintiff is the lack of objective medical evidence corroborating Plaintiff's symptom claims.  But "subjective pain testimony cannot

be rejected on the sole ground that it is not fully corroborated by objective medical evidence . . . ." *Rollins*, 261 F.3d at 857. Without Plaintiff's daily activities to buttress the adverse credibility finding, the ALJ's finding is inadequately supported.

## CONCLUSION

The ALJ's decision is not supported by substantial evidence and free of legal error. On remand, the ALJ should evaluate Dr. Hale's medical opinion and reweigh the medical opinion testimony. Additionally, the ALJ should ensure that any credibility finding is supported by legally sufficient reasoning.

**IT IS ORDERED:**

1.     Plaintiff's Motion for Summary Judgment (ECF No. 19) is **GRANTED** and the matter is remanded to the Commissioner for additional proceedings pursuant to sentence four. 42 U.S.C. § 405(g).

2.     Defendant's Motion for Summary Judgment (ECF No. 21) is **DENIED**.

3.     An application for attorney's fee may be filed by separate motion.

The District Court Executive is directed to file this Order, enter

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 27

1  **JUDGMENT FOR THE PLAINTIFF**, **REMAND THE CASE FOR**

2  **FURTHER PROCEEDINGS,** provide copies to counsel, and **CLOSE** the file.

3      DATED this August 3, 2016.

4                    _s/ Mary K. Dimke_
                    MARY K. DIMKE
5          UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20